# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

```
===========================================
                                            *
In Re:                                      *
                                            *  Chapter 11
    DANA LOUIS KIKLIS,                      *  No. 05-14287-WCH
                                            *
                    Debtor                  *
                                            *
===========================================
```

## DECISION ON OBJECTION TO DISCLOSURE STATEMENT

I. Introduction

The matter before the Court is the Disclosure Statement ("Disclosure Statement") of the debtor Dana Louis Kiklis ("Debtor"). LEM Realty Co., Inc. ("LEM") filed an objection on the grounds that the Disclosure Statement fails to adequately describe and address LEM's undersecured claim. For the reasons set forth below, I will enter an order sustaining the objection.

II. Background

The operative facts related to this issue are not in dispute. When the Debtor filed his petition under Chapter 11 on May 10, 2005, he listed an ownership interest in various parcels of real estate including a 9-unit parcel of real estate located at 267-277 Washington St., Haverhill, Massachusetts (the "Property"). Debtor purchased the Property from LEM in 2003 for $600,000. He granted a first mortgage for $454,500 to

1

Equity One, Inc. LEM took back a second mortgage for $58,000. At the time he filed for relief, the Debtor represented that the Property had a market value of $750,000 and was subject to two secured claims which together totaled approximately $559,000.

In his petition, the Debtor listed LEM as a secured creditor. LEM filed a proof of claim in the amount of $65,556.64 in advance of the August 30, 2005 filing deadline. In the spring of 2006, the Debtor filed a motion to sell the Property for $526,500 in cash with an additional $58,000 to be paid via a five year promissory note. Both Equity One, Inc. and LEM filed objections to the sale. In its objection, LEM represented that it was a secured creditor but that the sale proceeds would be insufficient to satisfy its mortgage. At the hearing, the Debtor represented that selling the Property was proving to be difficult for a number of reasons. Ultimately, I denied the motion because it did not meet the standards set forth in 11 U.S.C. § 363(f). The first mortgagee, Equity One, Inc., has received relief from the automatic stay but has not foreclosed on the Property.[1]

In the Disclosure Statement, the Debtor offers the details of the failed sale including his conclusion that had Equity One, Inc. accepted the terms of the sale, it might have been approved. The Debtor further discloses that he proposes to treat Equity One, Inc. as a Class Five Claim and LEM as a Class Six Claim. The Disclosure Statement contains a representation that both claims are secured by a lien on the Property. For the treatment of Class Five, the Disclosure Statement provides that the amount of the claim, $534,000, is disputed and that the Debtor will surrender the Property to Equity One, Inc. in full satisfaction of its claim. For Class Six, the Disclosure

---

[1] In its motion for relief, Equity One, Inc. represented that it was owed approximately $529,000.

2

Statement provides that LEM holds a purchase money security interest in the amount of $65,000 and that the Debtor will deed the Property to LEM on the effective date in full satisfaction of its claim.

The Disclosure Statement contains further provisions for additional secured claim holders. As for the unsecured claim holders, the Debtor represents that these claims will be paid in full. In order to further fund the plan, the Debtor contends that he will sell an additional property and refinance another.

Two parties filed objections to the Disclosure Statement and at the hearing, the United States Trustee explained her objections. At the hearing on the Disclosure Statement, the Debtor represented that the only unresolved objection was that of LEM and he would submit an amended disclosure statement which reflected those amendments.

In its objection and at the hearing, LEM argued that the Disclosure Statement did not meet the applicable standards of disclosure citing in support *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991).[2] In part, LEM asserted the Debtor did not provide enough information regarding how he ascertained the values of one of his properties and the efforts he has made to sell one of his properties and refinance another. LEM also argued that the Debtor's plan of reorganization is not confirmable because it does not provide interest for the unsecured creditors, improperly describes and treats the claims of LEM and Mencis, a related creditor, and does not comply with 11 U.S.C. §§ 1129(a)(3) and (a)(7)(A)(ii). Specifically with respect to its claim, LEM asserted that

---

[2]LEM and Lester Mencis jointly filed the objection.

3

its claim must be valued as of the time of confirmation at which time it will be determined that LEM's claim is undersecured, if not unsecured. LEM stated that its deficiency claim must receive the same treatment as the other unsecured creditors. Because the Disclosure Statement only treats that portion of its claim that may be secured, by transferring to LEM property which has no equity above the first mortgage, LEM concluded that the plan was proposed in bad faith and is not capable of confirmation. As such, it asserted, the Disclosure Statement cannot be approved.

With respect to the outstanding objection of LEM, the Debtor argued that he was willing to address all of the objections save the treatment of the LEM claim. The Debtor stated that deeding the Property to LEM was consistent with the Bankruptcy Code requirement that it offer LEM the indubitable equivalent of its claim. See 11 U.S.C. § 1129(b)(2)A)(iii). That is, the Debtor asserted that because LEM represented that it was fully secured in its now unamended proof of claim and because the sale was for a value that was close to the value LEM used in its proof of claim, LEM will receive by way of the transfer Property the indubitable equivalent of its claim. He concluded that LEM is estopped to argue that it is anything other than a fully secured creditor.

I assumed at the hearing that the claim of LEM is either completely unsecured, based upon the present value of the Property, or so close to being completely "underwater" that I will treat it as such for purposes of this decision.[3] I then asked the parties to provide briefs on the issue of whether a debtor who seeks to return to the creditor collateral which has no equity with which to satisfy the creditor's claim is giving

---

[3] Inasmuch as, in either case, LEM is not completely secured, the exact figures for the fair market value of the Property or the first mortgage do not affect my decision.

the creditor the indubitable equivalent of its claim.

In its post-hearing brief, LEM explains that when the Debtor filed for relief, the claim of the first mortgagee was $467,829.59 and on May 30, 2006 that claim had climbed to $534,000. Monthly payments are approximately $4,500 and the Debtor has made no monthly payments to the first mortgagee or LEM. LEM argues that while it filed a proof of claim asserting that on the petition date its claim was $65,556.64, given the present amount of the first mortgage and the amount of its claim, it is undersecured. To allow the Debtor to treat its claim as fully secured and issue to it a deed to the Property that has no value beyond the first mortgage is to render a recourse debt non-recourse and does not provide LEM with the indubitable equivalent of its claim.

In his post-trial brief, the Debtor describes the claim which LEM filed and explains that LEM has never amended its claim. He reminds the Court that during the Debtor's attempt to sell the Property, LEM represented that it was a secured creditor when it appears now that LEM was an undersecured creditor. The Debtor contends that the result of LEM's objection was that he was not able to sell the Property.[4]

With respect to his plan of reoganization, the Debtor explains that he has provided a "dirt for debt" transfer for both LEM and Equity One, Inc. He contends that this is the indubitable equivalent of LEM's claim and that LEM is estopped to argue at this point that its claim must be bifurcated. In support, the Debtor cites *In re Pennave Properties Assoc.*, 165 B.R. 793 (E.D. Penn. 1994) and *In re Harrison*, 987 F.2d 677

---

[4]Conversely, in his Disclosure Statement, the Debtor appears to lay the blame for the failed sale upon Equity One, Inc. See Disclosure Statement, p. 4 ("Had Equity One, Inc. been agreeable to such a treatment, the sale might have been able to go through.").

5

(10th Cir. 1993). Such estoppel is warranted where LEM filed a proof of claim as a secured creditor and argued for the disallowance of the sale based upon its position as a secured creditor.

After the parties submitted their briefs, LEM filed its Motion to Confirm Ruling That LEM Realty Co., Inc. Holds An Unsecured Claim Or, In the Alternative, Request That LEM's Claim Be Determined as An Unsecured Claim. In it, LEM explains that in its objection to the Disclosure Statement, it clarified that it has determined that the claim is now undersecured and asked that the claim be determined at the time of confirmation. LEM offers that the Disclosure Statement was the first time it learned that the Debtor intended to treat its claim as fully secured. Because the Debtor in its post-hearing brief continues to assert that LEM is estopped to argue that it is unsecured despite my contrary conclusions at the hearing, LEM requests a determination of the status of its proof of claim.

III. <u>Discussion</u>

In order to solicit acceptance or rejection of a plan or reorganization, a plan proponent must transmit to the holder of a claim or interest a disclosure statement which contains adequate information. 11 U.S.C. § 1125(b). Such information "means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . " 11 U.S.C. § 1125(a)(1).

The Disclosure Statement reveals that the Debtor proposes to first surrender the

6

Property to Equity One, Inc. and then deed the Property to LEM. The Debtor does not indicate what he intends when he describes a "surrender". The First Circuit recently wrote that for purposes of 11 U.S.C. § 521(a)(2), surrender must mean that collateral is made available to a secured creditor. *Pratt v. G.M.A.C. (In re Pratt)*, 2006 WL 2522139 (1st Cir. 2006). In different circumstances, courts have treated the term surrender differently. *In re Grubbs Constr. Co.*, 328 B.R. 873, 879 (Bankr. M.D. Fla. 2005) (ruling effect of surrender provision in plan was to divest estate and unsecured creditors of interest in collateral on effective date) and *In re May*, 174 B.R. 832 (Bankr. S.D. Ga. 1994) (treating plan provision for creditor to take title to real property by deed or foreclosure as a surrender). From the pleadings and the hearing, it appears that the Debtor, by using the word "surrender," intends to deed the Property to LEM subject to the first mortgage.

Because LEM has objected to this proposed treatment, the question becomes whether the Debtor is entitled to treat the LEM claim as provided in 11 U.S.C. § 1129(b)(2)(A)(iii). Under that section, I can confirm a plan despite objections so long as certain criteria are met, one of which is that the plan provides that secured creditors will receive the indubitable equivalent of their claims.[5] The Debtor can only implement

---

[5] A clear explication of the indubitable equivalent concept is found in *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank* (In re *Sandy Ridge Dev. Corp.*), 881 F.2d 1346,1349-50 (5th Cir. 1989) (citations and footnotes omitted; emphasis in original):
    Unless one accepts [Debtor's] appraisal of [the Property] at face value, LNB [the bank] is a classic example of an undersecured creditor; one whose collateral is insufficient to cover the entire debt. Section 506(a) of the Bankruptcy Code bifurcates an undersecured creditor's total claim into secured and unsecured portions. The Code's treatment of such creditors is determined not from the status of the party as a secured or undersecured *creditor*, but rather from the status of a claim as a secured

that section with respect to that portion of LEM's claim that is secured. *Sandy Ridge Dev.*, 881 F.2d at 1349-50. The parties, however, dispute the type of claim which LEM holds. The Debtor contends that under a theory of judicial estoppel, LEM is barred from asserting that its claim is other than a secured claim based upon its proof of claim and its objection to the sale.

The First Circuit has explained that in order to invoke judicial estoppel, a party

---

or unsecured *claim*. In situations involving only one creditor and one debtor, the value of the undersecured creditor's secured claim is simply the value of the underlying collateral. The difference between the collateral's value and the amount of the debt becomes an unsecured claim and is added to the existing pool of unsecured claims. . . .

. . . .
     Section 1129(b), the Code's cramdown provision, requires that a plan be "fair and equitable" in order to confirm the plan over a dissenting class of creditors. Section 1129(b)(2) provides:

> "For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>     (A) With respect to a class of secured claims, the plan provides—
>     . . . .
>     (iii) for the realization by such holders of the indubitable equivalent of such claims."

This "indubitable equivalent" language is at the heart of the current case, and fortunately its application is relatively straightforward. The key determination is the precise meaning of the phrase "such claims," and our inquiry concludes that "such claims" can only mean *secured* claims. Section 1129(b)(2) is divided into several subsections. Section 1129(b)(2)(A) deals with secured claims, while section 1129(b)(2)(B) deals with unsecured claims. Since the "indubitable equivalent" language is part of section 1129(b)(2)(A), it deals only with secured claims, and thus section 1129(b)(2)(A)(iii) can be accurately read to state 'the realization of the holders of secured claims of the indubitable equivalent of their *secured* claims."

8

must demonstrate that a litigant previously prevailed with a position that is inconsistent with the argument in the present proceeding. *Fleet National Bank v. Gray (In re Bankvest)*, 375 F.3d 51, 60 (1st Cir. 2004). "In determining whether the party 'succeeded' in a prior proceeding, we look to whether the prior forum 'accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum . . .'" *Id.*

In its objection to sale, LEM represented that it would be undersecured as a result. LEM was not the only objecting party and a review of the recording of the hearing on the sale motion reveals that both mortgagees were vigorous in their opposition. I ultimately ruled that the Debtor did not meet his burden of proof under 11 U.S.C. § 363(f). LEM's position in that proceeding is wholly consistent with its present position. Moreover, because my ruling on the sale motion involved the Debtor's lack of sustaining his burden and two objections, I cannot conclude that it was based solely upon LEM's position.

As for the proof of claim, the Debtor contends that because it has not interposed an objection and the deadline for filing a claim has expired, LEM must be bound by the characterization of its claim in its proof of claim. LEM timely filed a proof of claim. At the time LEM filed its proof of claim, the Debtor's description of the market value of the Property and the secured claims thereon reflected that LEM may have been fully secured. LEM was required to file its proof of claim approximately 100 days after the case was filed. Based upon the numbers used at the sale hearing and hearing on the Disclosure Statement, described above, LEM is an undersecured creditor at best.

LEM has moved to have the nature of its claim determined under 11 U.S.C.

9

§ 506. LEM is entitled to have its claim reconsidered. 11 U.S.C. § 502(j). Moreover, LEM is entitled to amend its proof of claim. *See, e.g., Gens v. Resolution Trust Corp.* 112 F.3d 569, 575-6 (1st Cir. 1997); *Clamp-All Corp. v. Foresta*, 235 B.R. 137 (B.A.P. 1st Cir. 1999). None of these actions appear to be untimely or prejudicial.[6] I cannot conclude at this point that LEM is bound by the proof of claim which it filed in August of 2005. Accordingly, the Debtor's argument that LEM is judicially estopped to argue that it is, at best, an undersecured creditor is without merit.

Having ruled that LEM is not bound by its proof of claim and it appearing that LEM is an undersecured creditor or unsecured creditor, the Disclosure Statement is insufficient in that it does not provide LEM any information regarding the proposed treatment of that portion of its claim that is unsecured. Moreover, it does not have sufficient information regarding the amount of its secured claim to determine whether a deed of the Property would be the indubitable equivalent of its secured claim. Accordingly, I cannot approve the Disclosure Statement.

IV. Conclusion

For the reasons set forth herein, I will enter an order sustaining LEM's objection to the Disclosure Statement.

Dated: 9/26/06

William C. Hillman
United States Bankruptcy Judge

---

[6]The cases to which the Debtor cited in his post-hearing brief are factually distinct from the facts of this case.

10